■ PAMELA V. BROUGHTON, an Infant, by Her Parent and Natural Guardian, WESLEY W. BROUGHTON, et al., Plaintiffs, v EUGENE DERY et al., Defendants. (Action No. 1.) DWAYNE STANTIAL, an Infant, by His Father and Natural Guardian, RICHARD E. STANTIAL, et al., Appellants, v EUGENE DERY et al., Respondents; PAMELA V. BROUGHTON, an Infant, by Her Mother and Natural Guardian, ROSE M. BROUGHTON, et al., Appellants. (Action No. 2.)— In Action No. 2 of consolidated negligence actions to recover damages for personal injuries, etc., plaintiffs and defendants Broughton separately appeal, (1) as limited by their respective briefs, from so much of a judgment of the Supreme Court, Orange County, entered April 28, 1976 (which judgment misnames and misdescribes parties), as is intended to be (a) in favor of plaintiffs and against said defendants and (b) in favor of defendants Eugene

Dery and Kenneth Crosland and against plaintiffs and defendants Broughton, after a jury trial limited to the issue of liability only, and (2) from an order of the same court, dated May 17, 1976, which denied (a) plaintiffs' motion pursuant to CPLR 4404, *inter alia,* to set aside the verdict insofar as it is in favor of Dery and Crosland and (b) defendants Broughton's motion, *inter alia,* to set aside the verdict against them and in favor of defendants Dery and Crosland and plaintiffs. The appeal by plaintiffs from so much of the order as denied their motion is dismissed as academic in the light of the disposition of the appeal from the judgment. Order otherwise affirmed. Judgment modified, on the law, by deleting the first decretal paragraph thereof and substituting therefor provisions (1) that, in Action No. 2, the plaintiffs have judgment against the defendants Broughton on the issue of liability and (2) granting a new trial as between plaintiffs in Action No. 2 and defendants Dery and Crosland, initially on the issue of the said defendants' negligence and then, if that issue is decided in plaintiffs' favor, on the issue of apportionment. Defendants Broughton shall have the right to participate in the new trial. As so modified, judgment affirmed insofar as appealed from. Costs are awarded to abide the event of a new trial. On November 19, 1971, shortly after 9:00 P.M., defendant Dery backed a tractor-trailer owned by defendant Crosland out from a truck terminal on Route 17K in the Town of Newburgh, Orange County. At that point Route 17K is a straight and generally level four-lane highway, with two lanes each for easterly and westerly travel. The posted speed limit was 45 miles per hour. The tractor-trailer was 55 feet long; the trailer itself was 40 feet long. The cargo on the flatbed trailer was steel pipe weighing about 40,000 pounds; the tractor-trailer's unloaded weight was 24,000 pounds. The truck terminal adjoined the south side of Route 17K. Dery entered the terminal at about 9:00 P.M.; the front of the tractor-trailer was forward. Shortly before Dery arrived a light rain had fallen. When the time came to leave, 10 or 15 minutes after his arrival, Dery found that the presence of other vehicles in the lot prevented him from maneuvering so as to be able to leave in a forward position. It was his intention to proceed west on Route 17K. He backed out northeasterly at a 45 degree angle, at least to the center of the highway, but stopped when he saw traffic proceeding westerly and waited until such traffic ceased so that he could continue backing up to the point where he could then proceed westerly. While in this stopped position he was struck by an eastbound passenger vehicle operated by Pamela V. Broughton, in which Dwayne Stantial was a passenger. At the trial there was conflicting testimony as to whether the right side of the flatbed trailer had illuminated lighting; it appears, nevertheless, that at least one of the three existing lights was on. However, in its stopped position, the front of the tractor was still in the terminal; its headlights therefore did not give warning to eastbound traffic of the presence of the vehicle on the road. Similarly, the rear lights, facing northeast, did not give warning to eastbound traffic. The flatbed trailer was dark in color and was loaded with dark colored pipe. There were four employees present at the truck terminal, but Dery apparently did not ask them to assist in his departure (e.g., by signaling or warning eastbound traffic or by making use of the emergency flares or flashlight which he had). Pamela Broughton testified that she had entered Route 17K about 500 feet to the west and was proceeding easterly at 35–40 miles per hour in the lane closer to the center, that her headlights were on low beam, that she saw "something in front of us" about 50 or 75 feet away and that she applied the brakes and moved to the left, but that the front of her vehicle struck the right rear tire area of the trailer. The

jury exonerated the operator and owner of the tractor-trailer, finding that only Pamela Broughton had been negligent. While the verdict against Pamela Broughton is supported by the evidence, the evidence in favor of plaintiffs Stantial and against defendants Dery and Crosland was "so great that the finding in favor of the [said] defendant[s] could not have been reached upon any fair interpretation of the evidence" (see *Olsen v Chase Manhattan Bank,* 10 AD2d 539, 544, affd 9 NY2d 829; see, also, Vehicle and Traffic Law, § 1211, subd [a]; *Axelrod v Krupinski,* 302 NY 367; *Ford v Chesley Transp. Co.,* 101 Cal App 2d 548). It would appear that the slow and awkward movement of the loaded tractor-trailer, in the night and on a wet road, necessitated affirmative action to warn eastbound traffic. Although the driver was ready at the wheel of an operating vehicle (cf. *Axelrod v Krupinski, supra),* the tractor-trailer was so lengthy, heavy and cumbersome, and in such a vulnerable position, that it was virtually impossible for its operator to move it out of the way of an oncoming vehicle. In such circumstances it would appear that the failure to use available warning communications constituted a grave danger, at least insofar as the passenger of the oncoming vehicle was concerned. We also deem it significant that Dery could have minimized this frighteningly dangerous situation by proceeding easterly on Route 17K and turning around elsewhere at a side street. Rabin, Acting P. J., Shapiro, Titone and O'Connor, JJ., concur.